May it please the Court, Michael Kodner on behalf of Petitioner Juan Hernandez Rea, and I would respectfully reserve one minute for rebuttal. There are three central issues that drive the current petition before the Court, all of them having to do primarily based on what the immigration judge determined to be a lack of good moral character relating to the cancellation application. Turning to the first issue, the record is crystal clear that the Board relied on incidences which predated the filing of the asylum application to disqualify for good moral character. In the last two Board decisions, they concluded that these incidents provided an alternative basis to deny the application. Although the immigration judge mentions the 1998 incidents, the immigration judge identified three separate incidences as the basis for the good moral character. So, counsel, just so I understand your argument, are you saying that it's impermissible for the agency to rely on actions before the filing of the application to decide that a person lacks good moral character? If we are proceeding under 1106, yes, Your Honor, based on these facts, because the 1998 incidents at the border were not, or at least the record does not support anything that these incidences were under oath, which means they cannot be tied to 1106, which is specifically in the Coongies decision. You mean 1101F6? Yes, 1101F6. Thank you, Your Honor. The point is, is that had the Board properly interpreted the immigration judge's decision, it would have allowed proper review of whether the three actual incidents qualified as good moral character, and assuming that these incidents were a lack of good moral character, that they could have provided, could have been but for a cause with respect to the ineffective assistance. The ultimate point is that the Board, from the outset, was relying on a fundamentally flawed basis. Turning to the next issue as to whether there was actual false testimony which negated good moral character, I think it's obviously important to start with the decision from Coongies. While Coongies did not necessarily require materiality, as the government raises in their brief, and even notwithstanding that the immigration judge clearly uses the word materiality throughout the entire decision, I think it's equally important for us to look at the accompanying standard from this case and the facts of this case, which ultimately differ from the current case. For example, Coongies requires a subjective intent to deceive for the purpose of obtaining immigration benefits. Equally as important is the determination of whether these statements have the natural tendency to influence the decision. Now, the Supreme Court in Coongies determined that the aliens lying about the place and date of birth would have naturally led to further investigation had he properly revealed the actual facts. Considering the three bases upon which the IJ did rely in terms of the asylum application and the two instances before the immigration judge, all of them having to do with the reflected address, had Petitioner properly revealed his Spring Valley address, it is my assertion that it would have had nothing to do on the bearing of the application, because ---- Well, wasn't the theory that that was the address that would qualify him for work, for an employment authorization? That's true, Your Honor. That's true. But the issue is whether he was living in the United States. And I understand that there was discrepancy in the addresses, but I refer back to the Coongies decision, and Coongies says that false testimony by itself does not lend itself to being a situation necessarily that has to be lack of good moral character. But would you agree that employment authorization is an immigration benefit? I would. I would counter with the fact of whether he was living in Spring Valley or Hollywood had no bearing on it, as long as it was not disputed that he was living in the United States. And there's nothing in the record to show that there was a dispute as to him living in the United States. But wasn't there something in the record that said he was informed that a Los Angeles address would enable him to get work authorization, and that's why that address was used? That was why that address was used. He was acting under the advice, the ill-prepared advice from a notario and later his attorney, Shahari. And that clearly goes to the ineffective assistance portion of if we're even assuming that these incidences were good moral character, were for good lack of good moral character, it's a but-for cause, because the alien in this respect is relying. We have to look at the reality of the situation here. Yeah, but the reality of the situation is not that he's relying on the advice of counsel. You can't rely on the advice of counsel to lie. That's the whole point of moral character, is that moral character says when somebody, even an attorney that you're paying, says lie about this, that you're going to say, no, I'm not going to do that. If it costs me my benefits, so be it. But you can't rely on the advice of counsel to lie. The whole essence of moral character. I understand that, Your Honor. I understand that, Your Honor. However, I don't think that if that was a contemplated situation, that the Coongeys decision wouldn't say false testimony by itself, because it's insufficient to necessarily establish good moral character. Doesn't it just come squarely within the plain language of the statute? That's all the Court did in Coongeys, was just rely on the plain language of the statute. He lied in order to get immigration benefits. It did, but my only counter to that, Your Honor, is the facts of Coongeys and the fact that he lied about where he was born and when he was born is what would have had the natural tendency to influence. It's my position that the Hollywood address versus the Spring Valley address would have had no tendency to influence the decision-maker, because that — But as Judge Rawlinson has questioned you, there is evidence in the record that the choice of venue between applying for the work permit in L.A. versus applying for the work permit in San Diego was of some consequence and that he had been told that it would be much easier to get the work permit in Los Angeles. That may have been what he was told, but in reality, being filed in San Diego versus Los Angeles has absolutely no bearing. Well, whether it was true in fact or not, that was his perception, and there is evidence in the record to support that. There's also evidence. Then he's lied because he thought he was going to get immigration benefits. I understand, Your Honor. There's also evidence in the record that is equally strong in the respect of Petitioner told this notario and told the attorney for me, I'm not living at the Hollywood address. And he was then told, no, you have to go with the Hollywood address, and that's the way that it is. I understand Your Honor's statement here and the fact of this is what was before the record. But again, this is my problem with respect to the Board's decision, and it kind of looks at things in a vacuum. This is an unsophisticated alien who has come in and has been taken care of and has been taken advantage of from the beginning. And I think equally important looking at the record respect is that this was the notario's M.O. This was not the first time that this has happened. This is exactly what they do with several, however many immigrants. We have a verified petition from an attorney who had several other immigrants that the exact same M.O. was done. This address was used by the notario's wife in a business filing with the United States. It was across the board. So my point is, is if we look at the reality of the situation, obviously I can't dispute Your Honor's statement here and the fact that there was a lie in her oath. But if we look at the reality of the situation, I think it goes directly to the lack of subjective intent, which the Supreme Court in Cubis found is extremely important. I think to refer back, Judge Rawlinson, to your statement of whether the 1998 incidences were relevant, clearly both the board and the government would clearly try to use the 1998 incidences to supplement the good moral character. I think that the reasoning from Cumbis is equally as important, and they state that the pattern of lies used to establish necessarily the false testimony is not proper. So I think that we have to take the 1998 incidents out of the equation. Turning again to the ineffective assistance, again, I remind the Court that the board really didn't even look at this. They used this alternative basis that did not exist in the first place and essentially glossed over the ineffective assistance claim, which goes to my argument that the board was kind of acting in a vacuum here. Again. Didn't the board say that the ineffective assistance of counsel claim was meritless because Rail did not suffer any prejudice? Correct, Your Honor. And that's just – that's precisely the type of gloss over reasoning that the board provides when there's absolutely no analysis of the actual facts of the case. The reason that's relevant, again, is Petitioner was reasonably believed Escobar to be attorney, as he held himself out to be. Petitioner told Escobar all they wanted was work authorization, but Escobar stated it was easier to get a green card. Told Escobar that he never lived in Hollywood, but Escobar insisted this address be used. Petitioner did not fill out the assignment application. Escobar did. Again, I go back to the independent third-party verification, which distinguishes this from a traditional IAC case where the Court only has the motion to reopen and the declaration to go on. This is independent verification that this existed. But does any of that matter if the Petitioner was not eligible for the relief that he was seeking? In terms of work authorization, Your Honor? In terms of – I thought he was seeking cancellation of removal. He was seeking cancellation of removal. So if he was statutorily ineligible for cancellation of removal, how was he prejudiced by any ineffective assistance of counsel? That's a fair question, Your Honor. Two points to that. Number one, that the Board did not necessarily address those in the two decisions on the motion to reopen. However, there's nothing within the record to show that these incidents at the border in 98, which Your Honor refers to to cut off presence, necessarily were the type which would cut off. We don't know if it was a turnaround. We don't know if it was under the threat of deportation, all of which is required by case law in terms of making that point. Okay. All right. Thank you, Counsel. You've exceeded your time, but we'll give you a minute for reply. Thank you, Your Honor. We'll hear from the government. Good morning, Your Honors. May it please the Court. My name is Dara Smith, and I represent the Attorney General. In this case, Mr. Hernandez-Reya failed to show good moral character for purposes of cancellation of removal because of his repeated false statements under oath which were made for the purpose of obtaining immigration benefits. He also failed to show that he was prejudiced by his attorney's alleged ineffective assistance because he made numerous false statements to immigration officials both before and after retaining counsel, making it clear that his counsel's actions are not responsible for his false statements. To begin, I'd just like to clarify that although the Board did mention in its 2008 decision these false statements at the border, there is no evidence in the record that those were under oath, and those are not a basis for the statutory ineligibility. And the government does not maintain that they are. What's your response to opposing counsel's position that those statements also can't be entered into the calculation for the presence in the United States for cancellation of removal eligibility? What's your response to that? Your Honor, the Board in its initial decision didn't rule on the presence issue, so we can't rely on that as a basis for his ineligibility. And the Board did indicate that there was no prejudice from his counsel's alleged ineffective assistance, but specifically referred to the good moral character disqualification. Okay. So you're not relying on the fact that he's ineligible for cancellation of removal. You're solely basing your lack of prejudice on the fact that he lacked good moral character. Your Honor, actually, the good moral character finding is a statutory basis for ineligibility because under 1101F6, that's a statutory bar. So he is statutorily ineligible rather than as a matter of discretion, but that's because of the good moral character finding. So the lies under oath are actually relevant to his statutory ineligibility. As Your Honor's pointed out, false statements under oath for the purpose of obtaining immigration benefits are those that make one ineligible for good moral character. And he did, in fact, give a false address because he believed that that would enable him to get work authorization. Now, as this Court pointed out in Ramos, it doesn't matter if he actually did obtain that benefit. It doesn't matter if what he believed was true. What mattered was his subjective intent to get that immigration benefit. And work authorization, while an asylum application is pending, is an immigration benefit under INA section 208D2. So it is a benefit under the INA, and that does qualify. And in particular, the statement to the asylum officer in 2001 did precede the retention of his current counsel. And he did speak to a notario beforehand, but the ineffective assistance claim was brought against the attorney, not the notario. And although this Court has held that reliance on a notario that one believes to be an attorney can be ineffective assistance of counsel, that's not the claim that was raised. There was some allegation of collaboration with this notario, but it's the attorney who was retained technically in 2002 that was the subject of the ineffective assistance claim. So there was false testimony under oath to obtain immigration benefits before the retention of that attorney. And the Board did bring previous false statements before the retention even of the notario into the case because it demonstrates that it's the Petitioner and not his attorneys who are responsible for his falsehoods under oath. Even though he was advised that this would be beneficial to him if he were to lie and give this Hollywood address, no one forced him to do that. He knew that it was untrue, and he did it specifically. He stated in immigration court because he believed that it would get him work authorization, and that's what he was told when he was initially filling out the asylum application. And that's why he didn't correct that address before the asylum officer and stated that everything in the asylum application was true under oath, in addition to the false statements that were then made under oath compounding that before the immigration judge. In immigration court as well, he did, although there were multiple instances of this false testimony, there's no need to look at this as an aggregate situation. One instance of false testimony under oath for the purpose of obtaining immigration benefits is sufficient. So the idea that somehow having multiple instances and considering other falsehoods tainted the decision simply doesn't make any sense. Only one incident is required. And as I discussed, there was one before the retention of his counsel and in multiple instances under oath that the immigration judge did rely on. Are there no further questions? It appears not. Thank you, Your Honors. Your bottle. Briefly, Your Honor, I just wanted to address counsel's reliance on the Ramos case. Obviously, we cannot deny the existence of this case, but I do believe that it's somewhat distinguishable in the fact that that case is devoid of a recitation of the facts as to what the purported false testimony before the asylum officer was and the ineffective assistance issue was not present before this court. I think without the presentation of the pertinent facts, it is not persuasive to use Ramos's reasoning to the letter because the purported material statements could not necessarily have been related to address. For example, that alien in Ramos could have said, could have lied about the basis for the asylum application. We simply don't know it after a reading of the actual decision. Moreover, there's nothing within the Ramos decision which holds that Ramos, had Ramos properly raised the ineffective assistance, that it could not have affected, could not have necessarily negated the material misrepresentation. The point is, is I think that Ramos leaves that issue open, which at the very moment we're asking the court to determine that even if these statements were material and they were misrepresentations, that they, but for the ineffective assistance, they would not have occurred. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for a decision by the court.
judges: Timlin, Rawlinson, Bybee